STATE OF HAWAII, Plaintiff-Appellant, *v.* NORA M. CUSTODIO, Defendant-Appellee

NO. 6515

HONORABLE RICHARD Y. C. AU, JUDGE

· MARCH 13, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.,
RETIRED JUSTICE MARUMOTO AND CIRCUIT
JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY RICHARDSON, C.J.

Appellant State of Hawaii appeals from the judgment of the District Court of the First Circuit granting appellee's pretrial motion to suppress drugs recovered as a result of a strip search of appellee in Hawaii State Prison. We reverse.

On August 7, 1976, defendant-appellee Nora Custodio arrived at Hawaii State Prison to visit one of the inmates. A sign posted in front of the prison gates serves notice to all visitors that they will be subject to search upon entry to the prison. After entry, appellee went through certain routine procedures[1] including registering information and checking her personal belongings with prison officials. After completing these procedures, appellee was led into a separate room and asked by Matron Dolores Kau whether she would submit to a strip search. She readily consented and proceeded to remove her clothing. As appellee removed her undergarments, Matron Kau noticed a white fuzz between appellee's legs in the vaginal area. When questioned by Matron Kau about the nature of the fuzz, appellee responded, "Nothing." Matron Kau then asked appellee to remove the article and appellee herself pulled the object out and handed it to the matron. The object recovered was a multi-colored balloon.

---

[1] The prison matron's testimony at trial regarding the procedures was as follows:

We process by writing her name, address, who she's visiting; and after that, we have her lock up all her personal belongings, her purse and items, into the locker and she goes into the room to be frisked.

Matron Kau then called the front gate guard who alerted the police department. On arrival of the police, appellee was questioned and the balloon seized. Appellee was arrested for promoting prison contraband in violation of HRS § 710-1023, a charge that was subsequently changed to promoting detrimental drugs, in violation of HRS § 712-1249. The balloon was taken to the police department's narcotics division and on analysis of its contents was found to contain .5 grams of marijuana.

On March 7, 1977, the Honorable Richard Au, District Judge of the First Circuit, granted appellee's motion to suppress the balloon and its contents, relying on this court's ruling in *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974). In his ruling Judge Au addressed two major points: (1) that although the initial strip search of appellee was proper, the seizure of the balloon from appellee's body cavity was not consented to — rather there was a "submission to authority"[2] — an unintentional waiver of appellee's constitutional rights; and (2) that the subsequent search of the balloon and recovery of its contents was also an unreasonable search because Matron Kau prior to opening the balloon only had a suspicion that it contained contraband. This "mere suspicion" was insufficient to constitute probable cause and therefore a warrant was required before the balloon's contents could have been searched.

We consider these two issues raised on appeal:

(1) Whether the initial seizure of the balloon was an unreasonable search and seizure in violation of the United States Constitution and state constitution.

(2) Whether the search of the contents of the balloon constituted an unreasonable search and seizure in violation of the United States Constitution and state constitution.

---

[2] Judge Au was referring to Footnote 7 in *Kaluna, supra,* where we rejected the contention that the defendant's "voluntary" submission of a marijuana packet to the matron was a consent to the search. We recognized that the matron would have subjected defendant to a thorough-going body search with or without her consent and thus the handing over of the packet could not constitute an "understanding and intentional waiver of a constitutional right."

4

We conclude that neither search violated either the federal or state constitutions.

I.

The Fourth Amendment of the Constitution of the United States guarantees each citizen a right to be free from unreasonable governmental intrusions:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Our state constitution, Article I, section 7, contains a similar provision which has been interpreted in some instances to afford greater protection than the federal constitution. See *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971); *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974). The reasonableness of a search within the meaning of the Fourth Amendment depends in large part on the facts and circumstances of the particular case. Often, the determination is made by a balancing of the individual's right to be free from arbitrary and unreasonable seizures and the governmental interest sought to be served.

Our decision in *State v. Martinez*, 59 Haw. 366, 580 P.2d 1282 (1978), is dispositive of the seizure of the balloon in this case. There, we reviewed the reasonableness of a prison strip search in which a plastic packet of marijuana was seized from defendant-visitor's body cavity. We upheld the search, finding defendant's consent to the search to be established in view of defendant's notice that entrance to the prison required all visitors to submit to a search and in view of the fact that she had submitted to such a search on previous occasions. Stressing the state's strong and legitimate interest in institutional order and security at the prison, we balanced this interest against the scope and manner of the search. On balance, we found the search to be not more intrusive than was necessary in light of its justifications.

In the present case, the record indicates that appellee had visited the prison previously on numerous occasions and had consented to strip searches on all these occasions. Furthermore, the sign indicating that all visitors would be subjected to a search was posted at the front gate to the prison and it is reasonable to assume that appellee was or should have been aware that it was prison policy to condition entry on submission to a search. The search was not carried out in an oppressive or discriminatory manner. At no time during the search was any force used, nor did Matron Kau assist appellee in removing either her clothes or the balloon.[3]

Judge Au relied on *State v. Kaluna, supra,* to find that appellee did not voluntarily consent to the production of the balloon in response to Matron Kau's request. He found appellee's surrender of the balloon a "submission to authority" and under *Kaluna, supra,* an act that did not constitute an understanding and intentional waiver of a constitutional right.[4]

Although initially persuasive authority for suppression of the balloon in this case, the *Kaluna* case can be distinguished. There, defendant had been arrested for attempted robbery and was in custody at the police station. Her freedom was curtailed and she was subject to search whether or not

---

[3] In fact it appears that the search here was even less intrusive than the one conducted in *Martinez, supra,* where the matron patted down defendant's upper body, inserted her hands in appellant's bra and pulled down her panties, seizing the plastic packet of marijuana inserted in her body cavity.

[4] The transcript at the preliminary hearing in which Judge Au made oral findings reads as follows:

There's no question in the Court's mind that prior to the time that the chemist analyzed the contents, prior to the time that Mr. Chang analyzed the contents, Mrs. Kau only had a suspicion. Officer Fujitani only had a suspicion that the same was contraband, but it was only after the analysis and the test and the check and analysis did the same indicate it was marijuana in its positive form.

Looking at the object itself, it was wrapped in a multi-colored balloon. It could not have been perceived with the naked eye unless the same was opened up and analyzed. Additionally, in the balloon itself was a waxed paper, and in the waxed paper was that marijuana. The same must be open before or must have been opened before there was a probable cause, and Prosecutor did suggest that there was a probable cause, but probable cause was obtained only after a search and analysis of the contents of State's Exhibit "A" for identification.

she would have consented. Thus, her "voluntary submission" of the packet to the matron was not a true consent to the search. As part of her detention and entrance into jail, search of her person for weapons or fruits of the crime would have been proper as a search incidental to a lawful arrest or under the "jailhouse search exception" to prevent weapons or harmful drugs from entering the prison or to inventory her personal belongings. *State v. Hanawahine*, 50 Haw. 461, 464, 443 P.2d 149, 151-152 (1968); *State v. Kaluna, supra.*

Here on the other hand, appellee was a visitor to the prison, free to leave whenever she so chose. Search of her person and production of the balloon was only a condition of entry to the prison. To avoid the search appellee need only have refrained from seeking admission. *State v. Martinez, supra.* Thus, unlike in *Kaluna*, the search of appellee was conducted with her full knowledge and freely given consent. In light of all these circumstances, including the reasonable manner in which the search was carried out, we find the seizure of the balloon constitutional.

II.

The State argues that its examination of the balloon's contents was justified without a warrant because the search was incident to a lawful arrest. It contends that a number of factors were present which in combination, constitute the probable cause required for appellee's arrest. However, notwithstanding the existence of probable cause, the justifications for the search incident to lawful arrest exception (to preserve evidence of the crime or to protect the arresting officer from weapons within defendant's reach) are absent here. In *Kaluna, supra,* the matron's recovery and subsequent opening of a tissue packet containing drugs found in defendant's brassiere was unreasonable because from an objective standpoint it was unlikely that the small packet secreted a weapon which the defendant could have used to escape or harm her captors or that it contained any "instrumentalities" of the crime of attempted robbery. In *Kaluna*, we were protective of the individual's constitutional

rights, mindful of the warrant exceptions but at the same time careful to limit the exceptions to those searches no greater in intensity than absolutely necessary in light of their justifications. In *Kaluna* the matron lacked probable cause to believe that fruits, weapons or instrumentalities of the crime of attempted robbery would be found on defendant's person. Therefore, the matron's opening of the packet out of "mere curiosity" was violative of defendant's Fourth Amendment guarantees.

Here, the exigent circumstances justifying a search incident to lawful arrest were also absent. After the seizure of the balloon from appellee's body and its subsequent surrender to the matron and police, the dangers of appellee reaching to destroy any evidence therein or to secure any possible weapons were eliminated. Although the search of the balloon was not lawful as incident to arrest, the search is justified as falling outside the purview of Fourth Amendment safeguards.

The United States Supreme Court in *Katz v. United States*, 389 U.S. 347 (1967) defined the scope of the interest protected by the Fourth Amendment. Whether a search is an unreasonable intrusion within the meaning of the Fourth Amendment turns on whether the search infringed upon appellee's "legitimate expectations of privacy." In *Katz*, the Court repudiated the old "trespass" doctrine[5] derived from *Olmstead v. United States*, 277 U.S. 438 (1928) and *Goldman v. United States*, 316 U.S. 129 (1942) and instead held that the protection of the Fourth Amendment is accorded not to places

---

[5] In Olmstead v. United States, 277 U.S. 438 (1928), the United States Supreme Court held that government agents' wiretap surveillance of private telephone conversations without trespass was outside the scope of Fourth Amendment protections. In Goldman v. United States, 316 U.S. 129 (1942), evidence also obtained by government agents using a detectaphone applied to the wall adjoining the defendant's office was held lawful where no trespass was committed in using the detectaphone although it had been installed as a consequence of a prior trespass. In both these cases the fact of the agents' non-trespass was a determinative factor in deciding whether Fourth Amendment guarantees were applicable. However, this distinction was rejected in Katz v. United States, 389 U.S. 347 (1967). There the Court stated: "[I]t becomes clear that the reach of that [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure." *Id.* at 353.

8

but to people. 389 U.S. at 360-361 (Harlan, J., concurring). *See United States v. Chadwick*, 433 U.S. 1, 7-11 (1977). A two-pronged test was enunciated to determine whether a defendant has a legitimate expectation of privacy in any given circumstance: first, the individual involved must have exhibited an actual expectation of privacy; second, the expectation must be one that society is prepared to acknowledge as reasonable. 389 U.S. at 360-361 (Harlan, J., concurring); *State v. Abordo*, 61 Haw. 123, _____ P.2d _____ (1979); *State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978); *State v. Boynton*, 58 Haw. 530, 574 P.2d 1330 (1978). Thus, whether the search of the balloon was reasonable turns on whether appellee had an actual, subjective expectation of privacy in the object and whether that expectation was one that society recognizes as reasonable.

Appellee expected that a balloon secreted within her body would not be opened; her own subjective expectation of privacy to such articles and their contents hidden where they were was reasonable. However, her expectation that the balloon would remain unopened once she consented to the strip search and recovery of the balloon was undertaken was not one that society would be prepared to acknowledge as reasonable.[6] Appellee's expectations of privacy in the balloon at this point were necessarily diminished once it was removed pursuant to a proper search of her body. Once surrendered, the object produced was an opaque, multi-colored balloon. Despite its lack of transparency, it was obvious that it contained something. On his arrival at the prison, Officer Fujitani observed that the balloon was wrapped in a curious way, indicating that it enclosed other evidence. Matron Kau told the officer that she felt "it might be some kind of drugs that was trying to be smuggled in the prison." Although a balloon in itself is not a harmful object, a retrieved balloon that was

---

[6] After appellee's initial entrance into the prison she checked her purse and personal belongings into a prison locker. Because she had previously been a visitor to the prison she knew that she would next be subjected to a strip search in a separate room. Thus, at this point any expectations of privacy she had in objects within her control were reduced.

formally concealed in an individual's body cavity is highly suspect. It was unreasonable for appellee to assume that such an object would escape scrutiny. Experienced officials and employees at the prison as well as police officers have knowledge that a receptacle such as a balloon hidden in a person's body cavity is commonly used for transporting drugs in and out of prisons.[7] In fact, the marijuana found in this case is precisely the type of contraband that prison officials and employees expect to discover in such searches.[8] The vital state goal of maintaining order and control in prison facilities justifies this court's wide-ranging deference to prison administrators in their exercise of discretion in prison affairs. *Holdman v. Olim*, 59 Haw. 346, 581 P.2d 1164 (1978); *State v. Martinez, supra* at 368. *See Jones v. North Carolina Prisoner's Labor Union, Inc.*, 433 U.S. 119 (1977); *Procunier v. Martinez*, 416 U.S. 396 (1974); *Pell v. Procunier*, 417 U.S. 817 (1974).

Prison security and maintenance are compelling governmental interests justifying restrictions on visitation.[9] As recent as this past term, the United States Supreme Court in *Bell v. Wolfish*, _____ U.S. _____, 99 S.Ct. 1861 (1979) upheld the reasonableness of visual body cavity inspections conducted on prisoners after every contact visit. In making its determination, the Court balanced four factors: the scope of the intrusion, the manner in which it was conducted, the

---

[7] In Bell v. Wolfish, _____ U.S. _____, 99 S.Ct. 1861, 1884 (1979), the United States Supreme Court stated, in a case involving *inter alia*, the constitutionality of visual body searches of prisoners after contact visits: "A detention facility is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons and other contraband is all too common an occurrence."

[8] Our state legislature has specifically designated such conduct as criminal. *See* HRS § 710-1023. *Cf.* Mathis v. Appellate Department of the Superior Court of Sacramento County, 28 Cal.App.3d 1038, 105 Cal.Rptr. 126 (1972).

[9] Some federal courts have even gone so far as to state that no absolute right to prison visitation exists. At best it is a non-fundamental right, which can be restricted by other than least drastic means. Laaman v. Helgemoe, 437 F.Supp. 269 (D.N.H. 1977); White v. Keller, 438 F.Supp. 110 (D.Md. 1977); Hamilton v. Saxbe, 428 F.Supp. 1101 (N.D.Ga. 1976).

justification for initiating it, and the place in which it was conducted. *Id.* at 1884. Following these guidelines, we conclude that the search of the balloon's contents was in accord with reasonable procedures. The manner in which it was conducted was not unduly harsh or oppressive and the need to preserve prison security and prevent the promotion of detrimental drugs are dominant concerns. Given appellee's diminished expectation of privacy in the balloon once it had been properly recovered, coupled with the compelling state interests in internal order and discipline in prison, this court finds the search within constitutional limits. The trial court's decision is reversed.

*Arthur E. Ross*, Deputy Prosecuting Attorney (*Roy K. S. Chang*, Deputy Prosecuting Attorney, on the briefs) for Plaintiff-Appellant.

*Jacquelyn desMarets*, Deputy Public Defender (*Marie N. Milks*, Deputy Public Defender, on the brief) for Defendant-Appellee.