STATE OF HAWAII, Plaintiff-Appellant, *v.* CLEMENT CHING, Defendant-Appellee

NO. 9112

(CRIMINAL NO. 7065)

MARCH 22, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

This case concerns the scope of a warrantless police inventory search of lost property. We hold that while lost property may be inventoried for identification, safekeeping, and safety purposes, the search made in the present case went beyond those purposes and was invalid. We therefore affirm the trial court's suppression of the discovered evidence.

On March 6, 1982, at 11:30 p.m., an eleven year-old boy found an unzipped leather pouch next to a blue Corvette parked in a public lot. The boy gave the pouch to his father, who looked inside it and then took it to the police station next door. At the station the father gave the pouch to Officer Kevin Freitas and described his son's discovery. Officer Freitas inventoried the pouch's contents pursuant to a routine departmental procedure for lost and found property in order, according to the parties' stipulation, to safeguard the property and protect the police department from false claims of lost or stolen property. Officer Freitas found the pouch contained defendant Ching's driver's license, Mastercharge card, papers, and a key ring which held twelve keys and an opaque brass cylinder two inches long and one-half inch in diameter. Officer Freitas opened the cylinder by unscrewing its brass top and found a white powder inside alleged to be cocaine.

Ching moved to suppress the contents of the cylinder. On December 1, 1982, the trial court granted the suppression motion, concluding that "the seizure of its contents was pursuant to a search which violated relevant proscriptions of the State and Federal Constitutions against unlawful searches and seizures."

I.

A threshold issue raised by the State is whether Officer Freitas made a "search" within the purview of the Fourth Amendment and

article I, section 7 of the Hawaii constitution[1] when he opened the cylinder and examined its contents. Ten years ago jurisdictions were split over whether an inventory of an arrestee's property (usually his car) was a "search" within the meaning of the Fourth Amendment. Some courts concluded that an inventory was a non-search procedure for the protection of the police and the owner; other courts considered an inventory to be a search. See discussion in *State v. McDougal,* 68 Wis. 2d 399, 228 N.W.2d 671, 675 (1975). In the present case the State urges us to side with the former line of authority.

This court and the United States Supreme Court, however, have already decided that police inventories are Fourth Amendment searches. *See, State v. Kaluna,* 55 Haw. 361, 374-75, 520 P.2d 51, 60-61 (1974) (inventory of arrestee's belongings is a search). Although the Supreme Court in *South Dakota v. Opperman,* 428 U.S. 364, 370 n.6 (1975), left open the issue of whether a police inventory is a Fourth Amendment search, in *Illinois v. Lafayette,* ____ U.S. ____, 103 S. Ct. 2605 (1983), the Court repeatedly referred to a police inventory as a search and read its *Opperman* opinion as establishing an inventory search exception to the Fourth Amendment warrant requirement. *Id.* at 2608. This is the better reasoned approach as one court has noted:

> [r]egardless of professed benevolent purposes and euphemistic explication, an inventory search involves a thorough exploration by the police into the private property of an individual. . . . Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the root of finely honed but non-substantive distinctions. . . .

---

[1] Article I, section 7, reads:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated. . . .

Except where we find that article I, section 7 provides greater protection to the individual than the Fourth Amendment to the federal constitution, we use the shorthand term "Fourth Amendment" to refer jointly to the rights secured by the Fourth Amendment and article I, section 7 of our state constitution.

Purely and simply the police inventory conducted here was a police search.

*Mozzetti v. Superior Court,* 4 Cal. 3d 699, 706, 94 Cal. Rptr. 412, 415, 484 P.2d 84, 88 (1971).

Nevertheless, in support of its contention that Officer Freitas' inventory is not governed by the Fourth Amendment the State argues that Ching did not have a legitimate expectation of privacy in his lost cylinder. This court has indeed held that a warrantless police search does not contravene the Fourth Amendment if it involves property in which the defendant has no legitimate expectation of privacy. *See, e.g., State v. Bayaoa,* 66 Haw. 21, 29, 656 P.2d 1330, 1335 (1982); *State v. Custodio,* 62 Haw. 1, 7-8, 607 P.2d 1048, 1052 (1980); *see also, Katz v. United States,* 389 U.S. 347 (1967). Whether a defendant has a legitimate expectation of privacy is determined by a two-part test: (1) the "defendant must have exhibited an actual expectation of privacy," and (2) "the expectation must be one society is prepared to acknowledge as reasonable." *Bayaoa,* 66 Haw. at 29, 656 P.2d at 1335; *Custodio,* 62 Haw. at 8, 607 P.2d at 1053.

Contrary to the State's assertion, Ching's cylinder meets both parts of the privacy test. The cylinder was made of metal, opaque, and sealed by a screw-on cap. This adequately demonstrated Ching's actual expectation of privacy in its contents. Moreover, Ching's expectation of privacy in the cylinder was socially reasonable even though he had misplaced it. The State's argument that an owner gives up all expectations of privacy in lost property is too extreme. Property is lost through inadvertence, not intent. Although owners of lost property must expect some intrusion by finders, common sense dictates that they do not forfeit all expectations of privacy in their property as though they had intentionally abandoned it.

We conclude that Officer Freitas' actions in unscrewing the cylinder cap and examining the cylinder's contents constituted a search governed by the Fourth Amendment.

II.

As a Fourth Amendment search, the burden of proof is on the State to fit it within a recognized warrant exception. *State v. Paa-*

*hana,* 66 Haw. at _____, 666 P.2d at 596; *State v. Clark,* 65 Haw. 488, 493, 654 P.2d 355, 359 (1982); *State v. Groves,* 65 Haw. 104, 108, 649 P.2d 366, 369 (1982). The only justification posited by the State is the inventory search exception recently discussed by the United States Supreme Court in *Illinois v. Lafayette,* _____ U.S. _____, 103 S. Ct. 2605, _____ L. Ed. 2d _____ (1983).

*Lafayette* involved the post-arrest stationhouse inventory search of an arrestee's handbag. One of the contents of the bag was a cigarette case which the police opened, discovering drugs. The Supreme Court acknowledged the actions of the police amounted to an inventory search subject to the reasonableness standard of the Fourth Amendment, but concluded the seach was reasonable because the government's legitimate interests outweighed the intrusion on the defendant's Fourth Amendment interests. *Id.* at 2608-09. The Court recognized that the State has a range of interests in making a post-arrest inventory search: (1) protection of the owner from theft of his property while in police custody; (2) protection of the police from false claims for lost or stolen seized property; (3) removal of potential weapons from arrestees; and (4) verification of the arrestee's identity. *Id.* at 2609-10.

The present case involves an inventory search of lost property rather than an arrestee's property, and is apparently a case of first impression. Guided by the principle that a search must not be broader than what is "absolutely necessary to accomplish the purposes for which such searches are permitted," *State v. Paahana,* 66 Haw. 499, 505, 666 P.2d 592 (1983); *State v. Melear,* 63 Haw. 488, 494, 630 P.2d 619, 625 (1981); *State v. Barnes,* 58 Haw. 333, 338, 568 P.2d 1207, 1212 (1977); *State v. Kaluna,* 55 Haw. at 369, 520 P.2d at 61, we have noted that in general an inventory search should be narrowly tailored to its purpose:

> an inventory search should be rigidly circumscribed in scope, perhaps more so than any other type of justified warrantless search. To the extent that the basic purposes of an inventory search can be accomplished by means which are less intrusive on an internee's privacy, then the constitutional rule of reason requires such means to be employed.

*State v. Kaluna,* 55 Haw. at 373, 520 P.2d at 61. We conclude that although lost property inventories involve the same four interests discussed in *Lafayette,* the priority and strength of each interest is

not the same as in the post-arrest context because the reasons underpinning the search differ.

Unlike a post-arrest inventory, identification of the owner far outweighs the State's other search purposes in searching lost property. When lost property is turned in to the police, their paramount goal must be to ascertain its ownership and return it to the owner in substantially the same condition as it was received. We therefore hold that police may validly search lost property to the extent necessary for identification purposes.

The police may also search lost property if necessary to safeguard the property, protect the police department from false claims, and protect the police from danger (for example, a bomb planted in "lost property"). These three interests, however, are not as strong in the present case as they are in a post-arrest situation such as *Lafayette*. Safeguarding lost property while in police hands is a valid State interest but the possibility that it might contain something valuable is much less likely than in the post-arrest context because any valuables are often already missing by the time the lost article is given to the police. Protection of the police from false claims is also less vital in the lost property context. Unlike the post-arrest situation, a person making a false claim that the police have mishandled lost property is faced with proving that the allegedly missing property was taken by police rather than by an original finder. Moreover, prudently sealing the property will protect the police against false claims; when the police handle lost property as gratuitous bailees for the benefit of the owner they are liable only for acts of gross negligence or bad faith. *Lopes v. Brito,* 7 Haw. 679, 681 (1889). Finally, it is rare that lost property will pose a threat to the safety of the police or others, unlike the property of an arrestee.

Because the need to search for valuable or dangerous contents is usually not compelling in lost property situations, a warrantless search for these reasons is valid only if the facts support an objectively reasonable belief that the lost property contained valuable or dangerous contents and that a search of the property was necessary to safeguard the valuables, protect the police from false claims, or negate the danger presented. If the facts do not sustain this burden, the police must handle the lost property by the less intrusive means of enclosing it in a sealed container. *State v. Kaluna,* 55 Haw.

at 375, 520 P.2d at 61; *People v. Bayles,* 82 Ill. 2d 128, 44 Ill. Dec. 880, 411 N.E.2d 1346, 1353 (1980); *State v. McDougal,* 228 N.W.2d at 678; *Mozzetti,* 4 Cal. 3d at 707-10, 94 Cal. Rptr. at 417-18, 484 P.2d at 89; *State v. Keller,* 265 Or. 622, 626, 510 P.2d 568, 570 (1973); *State v. Gwinn,* 301 A.2d 291, 293-94 (Del. Supr. 1972).[2] Applying these rules in the present case, none of the four State interests justifies opening a sealed two inch by one-half inch brass cylinder attached to a keychain.

### III.

Because the search of the cylinder went beyond the scope of a proper lost property inventory search, the trial court properly suppressed the contents of the cylinder. Affirmed.

*Barbara Ann T. Motoyama,* Deputy Prosecuting Attorney for plaintiff-appellant.

*Mark Van Pernis (Gallup, Van Pernis, Shaughnessy & Fagundes* of counsel) for defendant-appellee.

---

[2] We recognize that in *Illinois v. Lafayette* the United States Supreme Court held that the Fourth Amendment does not require police to use less intrusive means (such as sealing) to safeguard an arrestee's property. 103 S. Ct. at 2610. As mentioned, however, we have concluded that lost property does not present as strong a safeguarding interest as the post-arrest context does. Furthermore, in *Kaluna* we held that then article I, section 5 (now article I, section 7) of the Hawaii constitution provides greater individual protection from inventory searches than the Fourth Amendment and requires less intrusive means if feasible. *Kaluna,* 55 Haw. at 369 n.6, 374, 520 P.2d at 58 n.6, 61.