126 N.J. Super. 162 (1973)
313 A.2d 225
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT MANGHAN, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 10, 1973.
*163 Nino D. Caridi, Assistant Prosecutor, for the State (Mr. Sherwin D. Lester, Prosecutor of Bergen County, attorney).
Alfred J. Egenhofer for defendant.
CARIDDI, J.C.C., Temporarily Assigned.
This matter comes before the court, pursuant to R. 3:5-7, on defendant's timely motion to suppress evidence alleged to have been obtained as the result of an unlawful search and seizure.
The facts are not substantially in dispute as to the events leading up to defendant's arrest and his subsequent indictment *164 on charges of possession of heroin in violation of N.J.S.A. 24:21-20, subd. a(1) and taking prohibited articles (heroin) into an institution of detention in violation of N.J.S.A. 2A:104-12.
On the evening of August 14, 1973, at 7 P.M., defendant walked through a gate into the visitors section of the Bergen County Jail to visit a woman alleged to be his wife. This is the only gate visitors are allowed to enter, and above this gate is a sign which states, "Stop. You are subject to be searched while on these premises." Upon entering the premises defendant signed the visitors book, as he has done at least 12 times in the past.
An officer of the Bergen County Sheriff's Department had received confidential information from a matron of the same Department to the effect that defendant had been bringing drugs at visiting hours to his wife, who was incarcerated.
The captain apprehended defendant and ordered two other officers to escort him into another room and search his person. Defendant did not physically resist, but when informed that he was going to be searched he stated that he no longer wished to visit and would come back another day. He was not allowed to leave, and a search of his person revealed an aluminum foil packet in his right sock which contained a white powdered substance, later field-tested and found to be heroin.
It is also undisputed that this search was conducted without a search warrant. In a warrantless search the burden of proof is on the State. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Allen, 113 N.J. Super. 245 (App. Div. 1970).
The Fourth Amendment and Art. I, par. 7, N.J. Const. (1947), prohibit any unreasonable searches and seizures. Reasonableness is the ultimate standard and it is to be determined by the specific facts and circumstances in each case. "In justifying a particular intrusion a police officer must be able to point out specific facts, which taken together with rational inferences from these facts, reasonably *165 warrant that intrusion." Stephenson v. United States, 296 A. 2d 606 (D.C. Ct. App. 1972). Reasonableness requires the courts to weigh the necessity of the search against the intrusion into the privacy of an individual.
One of the well-established exceptions to the general requirement of a search warrant is when the attendant circumstances are exigent or emergent. Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); State v. Dennis, 113 N.J. Super. 292 (App. Div. 1971).
In Johnson, the Supreme Court stated:
There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed. [at 14], 68 S.Ct. at 369.
New Jersey appellate decisions have held that there must also be a showing of probable cause even if there are exceptional circumstances which excuse obtaining a warrant. State v. Naturile, 83 N.J. Super. 563 (App. Div. 1964). Probable cause has proven to be very difficult to define. It is something more than a mere incriminating inkling and less than absolute proof.
In the issue before this court an officer of the Bergen County Sheriff's Department received information from a member of the same Department, that defendant had given drugs to his wife during the jail's visiting period. State v. Gillman, 113 N.J. Super. 302 (App. Div. 1971) holds:
Information coming from law enforcement colleagues should be entitled to greater credence than knowledge supplied by an informer who lurks in or near the underworld. The courts have sensibly agreed that where information is so imparted by another law enforcement officer, it is to be received with benevolent assumptions. * * * [305]
The court feels that the information received from the matron, coupled with the fact that defendant had visited *166 the jail at least 12 times previously, supports a finding of probable cause.
The circumstances surrounding this incident certainly should be classified as exceptional or exigent. "Well reasoned opinions of Federal Courts, while not binding, are persuasive on the issue of reasonableness of a search and seizure, in absence of decisions of New Jersey reviewing courts." State v. Chance, 71 N.J. Super. 77 (Cty. Ct. 1961). United States v. Davis, 319 F. Supp. 20 (N.D. Fla. 1970), states:
* * * there are instances when the procedural safeguards and requirements of the Fourth Amendment are less stringent than might ordinarily be expected.
* * * where a search is made to maintain order or dicipline, to maintain security or to prevent the entry of forbidden articles into a designated area then a warrantless search is proper. * * * [22]
It is vital that contraband articles be kept out of a prison. This is necessary for the protection of the inmates, employees of the institution and law enforcement officials assigned to that institution. There is also a duty toward society which dictates that articles must be kept from a penal institution that would facilitate escape from such institutions.
The State not only has the right, but an obligation, to adopt laws which promote and insure the safety, health and morals of the inmates. It is not necessary to expound on the evils of drugs. However, the perils of the availability of drugs in a penal institution cannot be exaggerated. The ultimate purpose of a penal institution is rehabilitation. Such an institution has a duty to adopt reasonable procedures to insure that drugs are not available to inmates. The Legislature of New Jersey feels so strongly about this issue that it has enacted N.J.S.A. 2A:104-12 imposing a penalty upon one who attempts to take contraband into such institutions. Defendant is charged with a violation of this statute. This imposes a penalty in addition to the charge of possession of such contraband. Certainly, the Legislature feels this an exceptional situation. Therefore, in order to enforce this *167 statute, it was not unreasonable for the prison officials to conduct a search, as in the instant case, of defendant's person. This is especially true in view of the fact that a sign was posted informing the public that they were subject to such a search.
This type of search is comparable to the federally authorized customs, border and anti-hijacking airport searches. As in the issue before the court, these are situations where it is extremely necessary to detect and confiscate contraband. There are exceptional instances where warrantless searches are authorized. United States v. Skipwith, 482 F.2d 1272 (5 Cir.1973); United States v. Thompson, 475 F.2d 1359 (5 Cir 1973); United States v. Espinoza, 338 F. Supp. 1304 (S.D. Cal. 1972). These cases also hold that such warrantless searches may be conducted on "mere suspicion" of criminal activity in the absence of probable cause or when it is negligible. Since this court has found probable cause in the instant case, it is not necessary to decide whether a "mere suspicion" standard could be applied to a search of visitors to a penal institution. However, such an argument would not be without merit.
It is readily apparent that the logic which allows an airport search to come under the exception of exigent circumstances can be applied to a search of visitors such as the defendant.
There is a definite and substantial interest in keeping contraband from a penal institution. In addition, the person to be searched must voluntarily come to and enter the search area, as defendant did. He had every opportunity to avoid the procedure by not entering the visitors area. A sign was posted informing him of his liability to such a search.
The court feels that less stringent constitutional standards may be applied in this type of situation since the intrusion is so necessary and the circumstances under which such a search is conducted make it much less likely that abuses will occur:
*168 The public is assured that the net can sweep no wider than necessary since the broad right to search is limited to the last possible point in time and space which could protect the aircraft, the boarding gate (or secure corridor entrance). Thus, no mere passerby will be subject to this search  only those in the act of boarding planes could be involved. [United States v. Skipwith, 482 F.2d at 1276]
Once again, this logic can be applied to the issue before the court. In order to be subject to such a search one must pass through the gates of a penal institution and enter a specific area. A person walking past an institution, even if he appears suspicious, would not automatically be subject to such a search.
The State has alleged that defendant gave his "implied consent" to this search in view of the fact that he passed the sign at least 12 times and entered the visiting area. While there is some merit in this argument in looking at the totality of the circumstances, this court will not impose this standard for consent upon defendant. In authorizing this warrantless search the court is not basing its conclusions on whether defendant waived his right to Fourth Amendment protection but upon the necessity and reasonableness of such a search.
This court finds no merit in defendant's argument that once the nature of the search became apparent, he should have been permitted to leave the visitors area since he did not desire to be subjected to such a search. Once again, the standards set for airport searches are applicable:
Such an option would constitute a one-way street for the benefit of a party planning airplane mischief, since there is no guarantee that if he were allowed to leave he might not return and be more successful. Of greater importance, the very fact that a safe exit is available if apprehension is threatened, would by diminishing the risk, encourage attempts. Established search procedures are perhaps more valuable by what they discourage, than by what they discover. I see no constitutional requirement, where a defendant knew by objective signs that he was incurring the possibility of a search, that he should thereafter be allowed to play heads-I-win, tails-I-lose. [United States v. Skipwith, 482 F.2d at 1281]
*169 When a sheriff's officer had a tip from an extremely credible informant, that heroin had previously been brought into the jail by this defendant, he could not be allowed the option to leave without being searched. This would render such safeguards totally ineffective.
Upon a consideration of all the factors, it is concluded that it was a reasonable exercise of police power to search the defendant without a warrant.
The motion to suppress is denied.