PEOPLE v WHISNANT

Docket No. 52267. Submitted December 4, 1980, at Lansing.—Decided
February 17, 1981. Leave to appeal applied for.

Barbara A. Whisnant was charged with bringing drugs or narcot-
ics into a state prison. She moved to suppress certain evidence,
which motion was granted, Jackson Circuit Court, Russell E.
Noble, J. The people appeal by leave granted, alleging that
defendant had validly consented to the search which uncovered
the evidence. *Held:*

Defendant was put on notice of a possible search of prison
visitors by warning signs. She made no attempt to refuse to be
searched or to discontinue her visit upon being informed that
she was to be subjected to a random, pat-down search. The trial
court erred in finding that her consent was involuntary and in
granting her motion.

Reversed.

1. Searches and Seizures — Waiver of Search Warrants — Con-
sent to Searches — Burden of Proof.

The obtaining of a search warrant may be waived by an individ-
ual, and he may give his consent to a search and seizure;
however, such waiver or consent must be proved by clear and
positive testimony, there must be no duress or coercion, actual
or implied, and the prosecutor must show that the consent was
unequivocal and specific and freely and intelligently given.

2. Searches and Seizures — Waiver of Search Warrants — Con-
sent to Searches — Voluntariness of Consents and Waiv-
ers.

The voluntariness of a consent to a search and seizure and the

---

References for Points in Headnotes
[1, 2] 68 Am Jur 2d, Search and Seizure § 46 *et seq.*
[3] 8 Am Jur 2d, Aviction § 51.
68 Am Jur 2d, Search and Seizure §§ 59, 103.
[4-9] 60 Am Jur 2d, Penal and Correctional Institutions §§ 33, 50.
68 Am Jur 2d, Searches and Seizures § 21.
[6] Fourth Amendment as protecting prisoner against unreasonable
searches and seizures. 32 ALR Fed 601.

waiver of a search warrant should be determined by a court in light of all of the surrounding facts and circumstances involving a review of the words or actions of a defendant which manifest consent.

3. SEARCHES AND SEIZURES — ADMINISTRATIVE SEARCHES OF AIRLINE PASSENGERS — CONSENT TO SEARCHES — IMPLIED CONSENT TO SEARCHES — NOTICE.

Consent to administrative searches by an airline passenger can be inferred where such passenger attempts to board an aircraft after being put on notice by signs and public address announcements that all passengers are subject to search or where he is actually aware of the search procedures, providing he has the right to avoid a search by choosing not to board the aircraft.

4. SEARCHES AND SEIZURES — CONSENT TO SEARCHES — PRISON GUARDS — NOTICE.

A prison guard consents to routine searches without a warrant in the prison as a condition of his employment where he is put on notice by daily exposure to signs at the prison entrance warning of such searches and where he is aware of instances of other actual searches.

5. SEARCHES AND SEIZURES — CONSENT TO SEARCHES — PRISON VISITORS — STRIP SEARCHES.

A prison visitor impliedly consents to a strip search where he is aware that such searches are a condition of entry into the prison because of having been searched on previous visits.

6. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — SEARCHES OF PRISONERS.

The legitimate interest of the government in the institutional security and internal order and discipline of a prison renders the search without a warrant of an inmate immediately before and after a visit by someone from outside the prison both reasonable and necessary.

7. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — PRISONERS — PRISON VISITORS — REASONABLENESS — CONSTITUTIONAL LAW.

Governmental searches without warrants of inmates and visitors to a prison are judged by a standard of reasonableness in light of the constitutional guarantee of freedom from unreasonable searches and seizures, and reasonableness in a particular instance is determined from a review of the surrounding circumstances, depending on a balance between the public interest

and the individual's right to personal security free from arbitrary interference by officers of the law.

8. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — PAT-DOWN SEARCHES — REASONABLENESS.

Random pat-down searches without warrants of prison visitors are reasonable where the visitor is aware of the possibility of a search and can avoid it by choosing not to proceed with the prison visit.

9. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANTS — PRISON VISITORS — IMPLIED CONSENT TO SEARCHES.

The conduct and silence of a prison visitor, while not necessarily as unequivocal as a verbal consent to a search without a warrant, may, under the circumstances of a particular case, supply sufficient evidence of consent to justify the search.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Assistant Prosecuting Attorney, for the people.

*Parker, Adams & Mazur, P.C.,* for defendant.

Before: DANHOF, C.J., and M. F. CAVANAGH and MACKENZIE, JJ.

DANHOF, C.J. The people appeal by leave granted from a circuit court order of May 15, 1980, granting defendant's motion to suppress evidence. Defendant had been charged with bringing drugs or narcotics into a state prison in violation of MCL 800.281; MSA 28.1621. The motion was decided on the basis of the preliminary examination transcript.

On October 27, 1979, defendant went to Jackson Prison to visit an inmate. A female uniformed guard at the prison visiting center told her to leave her personal belongings in a locker, and, when defendant had done so, the guard asked her to step into a separate room. The guard then told

defendant, "We shake down at random and, if you don't mind, I'm going to shake you down before you go in". Defendant made no response, and the guard conducted a pat-down search, finding a balloon tucked inside the waistband of defendant's jeans. The balloon was turned over to a state police officer who opened it and found Valium and marijuana inside. These drugs were the subject of the suppression motion.

When asked how much time elapsed between her warning statement and the search, the guard replied, "Just a couple of seconds. There was no—I didn't stand there waiting for her to answer one way or another. She didn't answer, so I assumed she didn't mind if I shook her down." The guard also testified that signs posted in the visitor center parking lot and above the information desk warned visitors that they were subject to search and would be prosecuted for bringing alcohol, drugs, or weapons into the prison. She indicated that defendant was searched pursuant to a random search policy and not because of any suspicious appearance.

The people opposed the suppression motion on the ground that defendant had given valid consent to the search. The trial court found consent was lacking under the following standard recited in *People v Kaigler,* 368 Mich 281, 294; 118 NW2d 406 (1962):

"It is elementary that the obtaining of a search warrant may be waived by an individual and he may give his consent to search and seizure; but such waiver or consent must be proved by clear and positive testimony *and there must be no duress or coercion, actual or implied, and the prosecutor must show a consent that is unequivocal and specific, freely and intelligently given.*" (Emphasis in original; citations omitted.)

We apply the "clearly erroneous" standard of review to the trial judge's findings on the consent question. *People v Bunker,* 22 Mich App 396; 177 NW2d 644 (1970), GCR 1963, 517.1.

The people first argue on appeal that the trial court applied the wrong standard. They claim that the *Kaigler* test, quoted above, was rendered obsolete when the Michigan Supreme Court, in *People v Lumpkin,* 394 Mich 456; 231 NW2d 637 (1975), and *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *cert den* 422 US 1044; 95 S Ct 2660; 45 L Ed 2d 696 (1975), 422 US 1048; 95 S Ct 2665; 45 L Ed 2d 701 (1975), adopted the following standard for determination of consent to a search and seizure set forth by the United States Supreme Court in *Schneckloth v Bustamonte,* 412 US 218, 248-249; 93 S Ct 2041; 36 L Ed 2d 854 (1973):

"[W]hen the subject of the search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

The people point in particular to the refusal of the Court in *Bustamonte* to apply a standard requiring the state to demonstrate "intentional relinquishment or abandonment of a known right or privilege" in order to show valid consent to a search. *Id.,* 235-241.

The *Kaigler* and *Bustamonte* standards are consistent with each other in requiring that any consent given be voluntary; the latter merely elab-

orates by indicating that voluntariness should be determined based on all of the facts and circumstances and that the subject's lack of knowledge of the right to refuse consent does not mandate a conclusion that the consent was involuntary. We do not equate the "clear, unequivocal and specific" language in *Kaigler* with the intentional relinquishment or abandonment standard rejected in *Bustamonte* which applies to a waiver of constitutional guarantees protecting a defendant at trial. *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938). The emphasis in application of the *Kaigler* test is on the words or actions of defendant which manifest his consent. This differs from a test focusing on waiver of a right to refuse consent, which would make knowledge of the right to refuse determinative.

The Michigan Supreme Court has not expressed any desire to overrule the *Kaigler* standard. In fact, *Kaigler* was cited in *Reed, supra,* and in *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973), another case dealing with the issue of consent to a search. We reject the people's argument that the *Kaigler* test is no longer valid generally in search and seizure cases.

The people concede in their brief that the lower court may have reached the correct result under *Kaigler* but argue that a different standard should be applied because of the strong governmental interest in prison security and the lessened expectation of privacy on the part of prison visitors. They compare the instant case with a number of cases involving administrative searches of airline passengers or courthouse visitors. These cases do not stand for the rule that administrative searches are valid without consent. In *United States v Davis,* 482 F2d 893 (CA 9, 1973), the court recog-

nized the validity of airport-screening searches provided that the subject has the right to avoid the search by choosing not to board the aircraft. The court indicated that where a person aware of the search procedures attempts to board an aircraft "consent" to the search would exist. See, *United States v Dalpiaz,* 494 F2d 374 (CA 6, 1974), *McMorris v Alioto,* 567 F2d 897 (CA 9, 1978). Thus, in *United States v Doran,* 482 F2d 929 (CA 9, 1973), the court held that consent to a search of defendant's carry-on bag at an airport could be inferred because he proceeded after being put on notice that all passengers were subject to search by signs and public address announcements.

The implied-consent analysis suggested by the people has been utilized in cases involving searches of prison employees and visitors. In *United States v Sihler,* 562 F2d 349 (CA 5, 1977), the warrantless search of a prison guard was upheld based on his consent. The court found that the guard had consented to routine searches as a condition of his employment where a large sign at the prison entrance through which he passed each day warned that all persons entering were subject to routine searches and the guard was aware of instances where other persons in the prison had been searched. In *State v Martinez,* 59 Hawaii 366; 580 P2d 1282 (1978), the Court held that the consent of a prison visitor to a strip search would be implied where she was aware from having been searched on previous visits that such searches were a condition of entry to the prison.

This Court, in dealing with the constitutionality of the warrantless search of a prison inmate, discussed the governmental interest in prison security, stating:

"The preservation of the social order through enforce-

ment of the criminal law is one of the primary functions of government. It follows that the maintenance of penal institutions is not only within the constitutional powers of government but even essential to the accomplishment of its fundamental responsibilities. Among the substantial and important government interests involved in the maintenance of penal institutions are the 'preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry'. *Cf. Procunier v Martinez,* 416 US 396, 412; 94 S Ct 1800; 40 L Ed 2d 224 (1974). The legitimate interest of the government in 'institutional security' and 'internal order and discipline' makes it not only reasonable but also necessary that jail authorities have the right to search an inmate both immediately prior to and immediately after allowing him to meet with someone who comes into the jail from outside the jail enclosure and who will leave the jail enclosure to return once again to the outside world after the meeting is concluded. How else could the smuggling of weapons, drugs or other contraband be adequately controlled?" *People v Oliver,* 63 Mich App 509, 514-515; 234 NW2d 679 (1975).

The smuggling of weapons and drugs into prisons can be controlled by searches of visitors as well as inmates since visitors provide the contact with the outside world necessary for such activity. While we are not prepared to say that prison visitors give up all constitutional protections upon entering the prison, we do hold that it is reasonable for prison officials to condition such entry upon submission to a pat-down search. Governmental searches are judged under a standard of reasonableness in light of the constitutional guarantee of freedom from unreasonable searches and seizures. Reasonableness in a particular case is determined from the circumstances, and it "depends on a balance between the public interest and the individual's right to personal security free from arbi-

trary interference by law officers". *United States v Brignoni-Ponce,* 422 US 873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975). Random pat-down searches of prison visitors are reasonable where the visitor is aware of the possibility of the search and can avoid it by choosing not to proceed with the prison visit. Thus, the basis for the warrantless search is consent.

The trial court, in applying the *Kaigler* standard for consent, focused on the voluntariness aspect of that test, stating:

"In this case, the signs advising visitors that they would be subject to a search, the uniformed officer requesting and conducting the search, and the austere, oppressive atmosphere of a large prison might well have convinced the defendant that she abandoned her 4th Amendment rights when she entered the prison doors."

Before reaching the question of whether consent was voluntary, proper application of *Kaigler* requires a determination of whether there was consent at all. The trial court suggested that there might not have been unequivocal and specific consent, holding: "The prison employee clearly did not meet the requirements of *Kaigler* in obtaining defendant's consent, if, indeed, her consent was obtained."

Does the language in *Kaigler,* requiring unequivocal and specific consent, rule out the possibility of consent based upon the defendant's actions and silence at the time of the search? We think not. Defendant proceeded with her visitation attempt after passing conspicuous signs warning that visitors were subject to search. She said nothing when the guard suggested that she could refuse ("if you don't mind") immediately prior to the search.

While conduct and silence might not be as unequivocal as verbal permission to search, under the circumstances of the instant case, we hold that there was sufficient evidence of consent to satisfy the *Kaigler* test.

We are also convinced that any finding that consent was involuntary was clearly erroneous. Defendant was under no compulsion to continue her visitation attempt after she encountered the warning signs and, although the coercive atmosphere would have increased as she encountered the guard, we think that the circumstances viewed as a whole indicate that her consent was voluntary.

Reversed.