THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM R. TURNBEAUGH, Defendant-Appellant.

Fifth District   No. 82—105

Opinion filed July 21, 1983.

Donald E. Groshong, of Groshong and Moorman, Ltd., of East Alton, for appellant.

Barbara Adams, State's Attorney, of Hillsboro (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant was convicted in the circuit court of Montgomery County of unlawful possession of cannabis and with bringing contraband into a State penal institution. He appeals, contending that his automobile was unlawfully searched and that the evidence adduced, did not prove his guilt of either offense.

We first consider the issue raised by defendant regarding the alleged unlawful search. The essential facts are not disputed. Defendant turned off a State highway onto an access road which leads only to Graham Correctional Center near Hillsboro, Illinois. Larry Reynolds was a passenger in defendant's car. Defendant had driven about 50 yards on the access road when he was stopped by guard Garland Reed. The point of the stop was on the access road about 50 feet from the institution parking lot and 300 to 400 yards from the front door of the institution. Defendant and Reynolds were ordered to open the glove box, get out of the car, unlock the trunk, and stand aside. The vehicle was then searched by a canine officer using a dog. A clear plastic bag containing cannabis was seized from the console between the seats.

Defendant testified that he "assumed" that he was already on institution grounds when stopped. He had already passed 40 to 45 feet beyond a sign which stated: "ALL PERSONS AND VEHICLES ENTERING OR LEAVING THE GRAHAM CORRECTIONAL CENTER ARE SUBJECT TO SEARCH AT ANYTIME. ANY PERSON FOUND IN POSSESSION OF CONTRABAND WILL BE PROSECUTED."

Assignments regarding searches at the institution were varied periodically to prevent their detection and circumvention. On the date in question the assignment was to search all incoming visitors' vehicles. However, while defendant's car was being searched, some cars occupied by visitors drove through to the prison without being searched. Guard Reed testified that he had no reason to suspect that defendant or his car contained contraband and that he would not have searched defendant's car if defendant had objected or chosen to "back out" of the search; however, he stated that he did not so inform defendant. Guard Reed testified that in his opinion defendant "consented" to be searched by coming onto institution grounds. Reed did not ask for defendant's consent to conduct a search. Reed gave the following answers relative to other vehicles.

"Q. Have you had the experience on this facility grounds before of people driving in, driving around the facility and driving right back out again?

A. Yes, sir, I have had people that come in and that, when I asked them and they said they were just looking and I asked them to turn the car around and leave and in which they did.

Q. Have you ever seen the problem here in this facility of kids coming in and just driving around and going back out?

A. Well, we have more problems with the older people want-

ing to sightsee than the kids."

The institution's internal regulations state, *inter alia*, that the owner or driver of any vehicle to be searched should be advised that such person must either consent to be searched or be refused access to institution property.

The institution's grounds maintenance crew, apparently made up of prisoners, had supervised access to the institution parking lot. Assistant Warden Kerley testified that small amounts of marijuana had been found in cells in the institution; "however we haven't established that there is weapons that come in. [Sic.]"

Defendant first urges that no specific facts existed at the time defendant's car was stopped which were sufficient to justify the stop, as opposed to the subsequent search. We need not consider the propriety of the stop as a matter distinct from the propriety of the search. This is true because it is undisputed that the search itself was undertaken without a warrant, probable cause or any level of suspicion on the part of the officers, *i.e.*, with no more justification than the less intrusive stop.

■■ ■ The purpose of fourth amendment proscriptions is to impose a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents; thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's fourth amendment interests against its promotion of legitimate governmental interests. (*Delaware v. Prouse* (1979), 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667-68, 99 S. Ct. 1391, 1396.) Any search of an automobile is a "substantial" invasion of privacy. (*United States v. Ortiz* (1975), 422 U.S. 891, 896, 45 L. Ed. 2d 623, 629, 95 S. Ct. 2585, 2588.) Thus the question is whether the State's interest in keeping contraband out of penal institutions is sufficient to warrant this "substantial" intrusion and whether the search policy in question is "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio* (1968), 392 U.S. 1, 20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879.

■ The instant search was justified when tested by both criteria. The legitimate governmental interest, keeping contraband out of penal institutions, is in our view of ample significance to justify this search.

The more difficult issue is whether the search is reasonably related in scope to the purpose of keeping contraband out of penal institutions. We agree with defendant that searching all visitors' cars was not a foolproof method of preventing contraband from entering the

prison, particularly since the policy did not include contemporaneous search of a vehicle's occupants. However, it is important to note that vehicles traveling on the road which led only to the institution were the only ones subject to search, *i.e.*, the group is self-selected (see *State v. Manghan* (1973), 126 N.J. Super. 162, 313 A.2d 225; 3 W. La-Fave, Search and Seizure sec. 10.7(b), at 371 (1978)), since only those who choose to go to the institution use that road. Also significant is that visitors to the institution were warned at the point of entry by a prominent sign stating that they and their vehicles would be subject to search at any time if they continued on into the institution. (See *State v. Manghan* (1973), 126 N.J. Super. 162, 167, 313 A.2d 225, 228.) Such notice bears upon the reasonableness of the selection process: Because the group subject to search is self-selected by their decision to enter the institution, it is important that this decision be made with knowledge of the risks attendant upon further pursuance of their chosen course of conduct and with an opportunity to leave behind anything which might be embarrassing or incriminating if discovered. 3 W. LaFave, Search and Seizure sec. 10.7(b), at 372 (1978).

Defendant also urges that searching incoming cars was not a sufficiently reasonable method of detecting incoming contraband because of routine extensive searches of the person of each visitor to the institution, which would take place with or without the vehicle searches. We find that proposition sufficiently refuted by uncontradicted testimony that some inmates were allowed outside the perimeter enclosure of the institution and into the parking lot. Furthermore, this court has recently considered a case which, although dissimilar in issues, candidly indicates the type of activity the prison authorities are seeking to prevent. In *People v. McNair* (1983), 113 Ill. App. 3d 8, 446 N.E.2d 577, this court was presented with a situation in which an officer, in response to a "tip," observed an object containing cannabis being thrown over a prison fence under the cover of darkness.

■ Defendant also suggests that he should at least have been given the opportunity to either consent to a search of his car or choose to depart. We disagree. An option to depart rather than be searched would constitute a one-way street for the benefit of the party planning mischief, as there is no guarantee that he would not return later and be more successful. *State v. Manghan* (1973), 126 N.J. Super. 162, 168-69, 313 A.2d 225, 228-29; see *United States v. Skipwith* (5th Cir. 1973), 482 F.2d 1272, 1277; contra, 3 W. LaFave, Search and Seizure sec. 10.7(b), at 372-73 (1978); but see *People v. Whisnant* (1981), 103 Mich. App. 772, 779, 303 N.W.2d 887, 891.

Defendant also argues that the officers conducting the search

failed to comply with the Department of Corrections' own directive that an individual whose person or vehicle is subject to search be offered the option of leaving the premises instead of being searched. While the undisputed facts indicate that that directive was violated, defendant does not offer authority upon which we might accord the violation some significance in the context of the case at bar, and we know of none.

Defendant cites for comparison *People v. Thompson* (1974), 185 Colo. 208, 523 P.2d 128, where the defendant was searched, apparently without consent, resulting in the discovery of two bottles of whiskey. "[U]nable to detect anything approaching a semblance of probable cause to search" (185 Colo. 208, 211, 523 P.2d 128, 130), the Colorado supreme court held that the evidence should have been suppressed. The court also rejected the attorney general's contention that warrantless searches of penitentiary visitors and their cars should be permitted under a relaxed standard of probable cause. Considering the totality of the circumstances in the case at bar, we find *Thompson* unpersuasive in that it no more than pays lip service to the State's imperative need to keep contraband out of penal institutions.

Defendant also cites for comparison *State v. Custodio* (1980), 62 Haw. 1, 607 P.2d 1048, where the defendant consented to a search resulting in the discovery of contraband. The instant case is distinguishable in that the State is not arguing consent as a potential justification in the case at bar. Moreover, we adopt that court's observation that "[s]earch *** was only a condition of entry to the prison. To avoid the search appellee need only have refrained from seeking admission." 62 Haw. 1, 6, 607 P.2d 1048, 1051-52.

Defendant also cites *Jordan v. Wolke* (E.D. Wis. 1978), 450 F. Supp. 213, 215, apparently for the proposition that jail visitors must be informed that they may refuse to be searched but will thereby forfeit the opportunity to visit. The case cites no authority in support of that proposition, and we find it unpersuasive to the extent that it suggests that a visitor may depart and avoid a search.

We next consider defendant's contention that the undisputed facts did not prove that defendant committed the offense of bringing contraband "into" a penal institution. (Ill. Rev. Stat. 1981, ch. 38, par. 31A—1(a)(1).) Defendant argues that "into" refers to passage through a portal of some kind, as a door, gate, or fence. We find this contention to be without merit. It is uncontradicted that defendant was apprehended upon institution grounds; and there was ample testimony at trial that institution work details had access to the grounds beyond the perimeter fence surrounding the buildings themselves.

■ Defendant's next argument is that he was not proved guilty of unlawful possession of more than 10 grams but less than 30 grams of cannabis or of bringing contraband into a penal institution because he was not proved to be in actual possession of the cannabis. Under the provisions of statutes prohibiting possession of contraband, constructive possession is generally accepted to be a sufficient possession to constitute a violation. To sustain a conviction on the basis of constructive possession, it must be shown that the defendant, although not having personal physical dominion, has the intent and capability to maintain control and possession and knows of the presence of the contraband. Knowledge may be proved by inferences from circumstantial evidence. The accused must be shown to have exclusive control of the area where the items illegally possessed were located. It has been held that the driver of a car is not without immediate and exclusive control of the inside of the car merely because he had one passenger. *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 1023-24, 426 N.E.2d 296, 298.

■ We find sufficient circumstantial evidence of defendant's constructive possession of the cannabis in the instant case. Defendant owned and drove the car in which it was found, having removed himself from it just prior to discovery of the cannabis; the cannabis was found in close proximity to where defendant had been seated; the console where the cannabis was found was a relatively small receptacle which the driver of the car was likely to resort to periodically; *i.e.*, it is unlikely that anything of significant size would escape the driver's attention for a lengthy period of time. We agree with the State's argument that the jury was entitled to disregard defendant's self-serving denial of knowledge of its existence.

Defendant also argues without supporting authority that our conclusion that defendant was proved guilty of bringing contraband into a penal institution is novel and should be applied prospectively only. We disagree because our construction of section 31A—1(a)(1) is merely a commonsense construction based on the clear wording of the statute.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

HARRISON, P.J., and JONES, J., concur.